UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERNICE SUMMERS, Individually, | ) Case No.: 10-CV-05730-LHK |
| Plaintiff, | ) ORDER GRANTING IN PART AND |
| v. | ) DENYING IN PART DEFENDANTS' |
| | ) MOTION DISMISS |
| DELTA AIRLINES, INC., MESABA AVIATION, INC. operating as DELTA CONNECTION, and Does 1-20, inclusive, | ) |
| Defendants. | ) |

Defendants Delta Air Lines, Inc. ("Delta") and Mesaba Aviation, Inc.[1] move to dismiss Plaintiff Bernice Summers's Complaint on grounds of federal preemption and insufficient pleading. The Court heard oral argument on March 24, 2011. Having considered the submissions and arguments of the parties, the Court grants in part and denies in part Defendants' motion to dismiss.

**I. Background**

On June 13, 2010, Plaintiff Bernice Summers flew to San Jose, California, to visit her daughter on Delta Flight 2163, allegedly operated by Mesaba.[2] Compl. at 1, ¶¶ 13-14. Plaintiff is

---

[1] On April 1, 2011, the parties stipulated to dismiss the claims against Mesaba, and it is no longer a party to this case.

[2] The Complaint alleges that Plaintiff's flight to San Jose was operated by Mesaba, but at oral argument the parties appeared to agree that Mesaba operated only Plaintiff's earlier flight from Memphis to Minneapolis and not the flight from Minneapolis to San Jose. As noted above, Plaintiff has dismissed Mesaba from this case.

1
Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

an 84-year-old woman who suffers from various physical limitations and therefore requires special assistance and the use of a wheelchair while entering and exiting an airplane. Compl. at 1. Prior to her trip to San Jose, Plaintiff arranged, with the help of her daughter, to have special assistance from Delta, including the use of a wheelchair to enter and exit the plane. Compl. ¶ 13.

On June 13, 2010, when Delta Flight 2163 landed in San Jose, the plane did not pull up directly to the gate, but instead passengers were required to disembark by walking through the plane's door, onto a platform, and down a flight of stairs. Compl. ¶ 14. Delta did not provide a wheelchair to assist Plaintiff's exit, and flight personnel did not offer to assist her in exiting. Compl. ¶ 15. Surprised that a flight attendant had not offered to assist her from the plane, Plaintiff attempted to exit the plane on her own.[3] Compl. at 2. Plaintiff claims that there was a large gap or step between the plane's door and the platform leading to the stairs, due to the different heights of the platform and the floor of the plane. Compl. ¶ 16. The flight crew did not use a ramp to cover the gap or step, and flight personnel did not attempt to help Plaintiff or offer her assistance in exiting the plane. *Id.* Plaintiff alleges that the large gap or step constituted a dangerous condition for herself and other passengers. *Id.* While Plaintiff was attempting to step over the gap or step, and while a flight attendant and pilot stood within a few feet of her, Plaintiff fell, seriously injuring her leg and hip. Compl. ¶ 17. After falling, Plaintiff claims that she lay on the platform in serious pain for over an hour while waiting for medical care. Compl. ¶ 18.

Plaintiff alleges that she fell and incurred serious injuries due to the dangerous condition created by the step or gap and due to the lack of required assistance from flight personnel. Compl. ¶ 17. She claims the flight personnel did not make her aware that there was a platform and a flight of stairs she would have to descend in order to exit the plane. Compl. ¶ 15. She claims, further, that Delta was aware that she could not exit in this manner since she had arranged for wheelchair assistance prior to the flight. *Id.* Based on these allegations, Plaintiff filed the instant action against Defendants Delta and Mesaba on December 15, 2010, invoking the Court's diversity jurisdiction. Her Complaint asserts four state law causes of action: (1) failure to provide the utmost

---

[3] At oral argument, Plaintiff's counsel acknowledged that one of Plaintiff's daughters was also on the flight. This fact is not disclosed in the Complaint. The parties disagree about whether Plaintiff's daughter was directly behind Plaintiff or further back in the plane during the flight.

2
Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

1   care and diligence in the safe carriage of Plaintiff, in violation of California Civil Code § 2100; (2)

2   failure to provide a plane safe and fit for its purpose, in violation of California Civil Code § 2101;

3   (3) negligence; and (4) negligent infliction of emotional distress.  Defendants argue that each of

4   these claims is preempted by the Air Carrier Access Act of 1986 and now move to dismiss the

5   Complaint on grounds of federal preemption and other alleged deficiencies.

6   **II. Legal Standard**

7   A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

8   sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A Rule 12(b)(6)

9   dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient

10  facts alleged under a cognizable legal theory.  *Johnson v. Riverside Healthcare System, LP*, 534

11  F.3d 1116, 1121 (9th Cir. 2008).  In considering whether the complaint is sufficient to state a

12  claim, the court must accept as true all of the factual allegations contained in the complaint.

13  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  However, the court need not accept as true

14  "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations

15  that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare*

16  *v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008).  While a

17  complaint need not allege detailed factual allegations, it "must contain sufficient factual matter,

18  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949

19  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible

20  when it "allows the court to draw the reasonable inference that the defendant is liable for the

21  misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  If a court grants a motion to dismiss, leave to

22  amend should be granted unless the pleading could not possibly be cured by the allegation of other

23  facts.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

24  **III. Discussion**

25  In their motion to dismiss, Defendants raise two bases for federal preemption of Plaintiff's

26  state law claims.  First, Defendants argue that all of Plaintiff's claims are preempted by the Air

27  Carrier Access Act ("ACAA"), 49 U.S.C. § 41705, and the implementing regulations promulgated

28  by the U.S. Department of Transportation ("DOT"), 14 C.F.R. Part 382.  The ACAA was enacted

3

Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

in 1986 as an amendment to the Federal Aviation Act. Pub. L. No. 99-435, 100 Stat. 1080 (1986). The ACAA and its implementing regulations prohibit air carriers from discriminating against passengers on the basis of disability; require carriers to make aircraft, other facilities, and services accessible; and require carriers to take steps to accommodate passengers with disabilities. 14 C.F.R. § 382.1. Defendants also argue that the Federal Aviation Act, 49 U.S.C. § 40101 *et seq.*, preempts Plaintiff's first and second causes of action under the California Civil Code because the FAA imposes a federal standard of care and preempts claims based on a state-law standard of care. Finally, Defendants also argue that if Plaintiff's fourth cause of action is not preempted, it must be dismissed because it is insufficiently pled.

### A. Background on Preemption under the FAA and the ACAA

It is well-established that Congress may preempt state law, either expressly or impliedly. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Here, the parties agree that neither the ACAA nor the FAA contains a relevant express preemption provision. "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (citations and quotation marks omitted). In this case, Defendants' arguments are primarily directed toward field preemption. Although the Ninth Circuit has not yet considered the preemptive effect of the ACAA, it has twice considered the field-preemptive effect of the FAA. Because the Ninth Circuit's decisions rely heavily on the Third Circuit's analysis of FAA field preemption, and because the Third Circuit has considered the preemptive effect of the ACAA, the Court will consider the decisions of both circuits, as well as recent district court decisions, in evaluating Defendants' arguments.

#### 1. Ninth and Third Circuit Precedent

In *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007), the Ninth Circuit considered the general preemptive effect of the FAA for the first time. In *Montalvo*, the plaintiffs brought common law negligence claims against various airlines for failure to warn passengers about the danger of developing deep vein thrombosis. *Id.* at 467-68. The district court held that the FAA preempted the field of preflight warnings and therefore dismissed the failure-to-warn claims. *Id.* at

4
Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

468. Upon review, the Ninth Circuit noted that a number of circuits had concluded that the FAA preempts discrete aspects of air safety. *Id.* The Third Circuit, however, had gone a step further. *Id.* (citing *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 367-68 (3d Cir. 1999)). Based on the historic need for uniformity in air safety and the pervasive nature of regulations under the FAA, the Third Circuit in *Abdullah* held that the FAA preempts all state or territorial standards of care relating to aviation safety. 181 F.3d at 368-71. The Third Circuit also noted that FAA regulation 14 C.F.R. § 91.13(a) supplies a comprehensive, general standard of care that can be used in cases where there is no specific regulation addressing the particular risk at issue in a given case. *Id.* at 371; *see also* 14 C.F.R. § 91.13(a) ("No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."). The *Abdullah* court imposed a critical limitation on its holding, however. Reasoning that federal standards of care can coexist with state and territorial tort remedies, the Third Circuit concluded that while the FAA broadly preempts all state or territorial *standards of care*, state tort claims based on violations of the federal standard of care are not preempted. 181 F.3d at 375. Thus, the Third Circuit stated: "Even though we have found federal preemption of the standards of aviation safety, we still conclude that the traditional state and territorial law remedies continue to exist for violation of those standards." *Id.*

In *Montalvo*, the Ninth Circuit "adopt[ed] the Third Circuit's broad, historical approach to hold that federal law generally establishes the applicable standards of care in the field of aviation safety." 508 F.3d at 468. The Ninth Circuit reviewed the regulations promulgated under the FAA and determined that those regulations, "read in conjunction with the FAA itself, sufficiently demonstrate an intent to occupy exclusively the entire field of aviation safety." *Id.* at 471. It also found that the purpose, history, and language of the FAA indicate Congress's intent to create a "single, uniform system for regulating aviation safety." *Id.* Accordingly, following the Third Circuit's decision in *Abdullah*, the Ninth Circuit held that the "FAA, together with federal air safety regulations, establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, states." *Id.* at 474. Because the federal standard did not require warnings about deep vein thrombosis, the Ninth Circuit held further that Plaintiff's negligence claim failed as a matter of law. *Id.*

5

Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

1     Since the decisions in *Abdullah* and *Montalvo*, both the Ninth and Third Circuits have

2 clarified, and to some degree limited, the scope of field preemption under the FAA. First, in 2009,

3 the Ninth Circuit in *Martin* considered a personal injury claim brought by a pregnant woman who

4 fell from an airplane's stairs, injuring herself and her fetus. *Martin ex rel. Heckman v. Midwest*

5 *Exp. Holdings, Inc.*, 555 F.3d 806, 808 (9th Cir. 2009). The airline had settled with the passenger

6 and sought indemnity from the stair manufacturer. *Id.* Relying on *Montalvo*, the manufacturer

7 argued that the FAA preempted the passenger's personal injury claims and, consequently, the

8 airline's indemnity claim. *Id.* The Ninth Circuit disagreed. Reviewing its earlier decision, the

9 Ninth Circuit found that "[c]onsidered as a whole . . . *Montalvo* cuts against the manufacturer's

10 argument for broad FAA preemption." *Id.* at 809. The court emphasized that the preemption

11 analysis in *Montalvo* rested heavily on the FAA's pervasive regulation of warnings to passengers

12 and noted that the decision did not find FAA preemption of the plaintiffs' claim that the airplane

13 seats were defectively designed. *Id.* at 809-810. The Ninth Circuit also pointed to its decision in

14 *Charas v. Trans World Airlines, Inc.*,160 F.3d 1259 (9th Cir. 1998), which reversed several

15 decisions that interpreted preemption of personal injury claims under the Airline Deregulation Act

16 too broadly. *Martin*, 555 F.3d at 810-11. The Court noted that this holding would be moot if all of

17 the personal injury claims in *Charas* were preempted by the FAA. *Id.* at 811. Based on this

18 analysis, the Ninth Circuit clarified the preemptive effect of the FAA as follows:

> *Montalvo*, then, neither precludes all claims except those based on violations of specific federal regulations, nor requires federal courts to independently develop a standard of care when there are no relevant federal regulations. Instead, it means that when the agency issues "pervasive regulations" in an area, like passenger warnings, the FAA preempts all state law claims in that area. *In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable*.

23 *Id.* at 811 (emphasis added). In analyzing FAA preemption, therefore, courts should "look[] to the

24 pervasiveness of federal regulations in the specific area covered by the tort claim or state law at

25 issue." *Id.* at 809.

26     As to the specific claim at issue in *Martin*, the Ninth Circuit reviewed the FAA regulations

27 related to aircraft stairs and found only a single regulation requiring that stairs not be designed in a

28 way that could block emergency exits. *Id.* at 812 (citing 14 C.F.R. § 25.810). The court noted that

6
Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

1    the regulations said nothing about handrails, "maintaining the stairs free of slippery substances, or
2    fixing loose steps before passengers catch their heels and trip." *Id.* Based on the lack of
3    regulation, the Ninth Circuit found it "hard to imagine that any and all state tort claims involving
4    airplane stairs are preempted by federal law." *Id.* Accordingly, the Ninth Circuit held that the
5    FAA did not preempt state law claims that airplane stairs are defective. *Id.*

6    The Third Circuit, too, has taken a second look at FAA preemption and also considered
7    preemption under the ACAA. In *Elassaad v. Independence Air, Inc.*, 613 F.3d 119 (3d Cir. 2010),
8    the Third Circuit considered the claim of Plaintiff Joseph Elassaad, whose right leg was amputated
9    above the knee and who required crutches to walk. Elassaad fell and was injured while attempting
10   to descend a narrow staircase from the plane to the tarmac. *Id.* at 122. The district court granted
11   summary judgment in favor of the airline, finding that under *Abdullah* federal law dictated the
12   standard of care and that the ACAA imposed no affirmative duty to offer assistance under the
13   circumstances alleged. *Id.* at 124. On appeal, the Third Circuit reversed. First, the Third Circuit
14   determined that the FAA did not preempt Elassaad's claims and clarified that the analysis of field
15   preemption in *Abdullah* applied only in the context of "in-flight safety." *Id.* at 126. The Third
16   Circuit reasoned that the FAA and its implementing regulations are primarily concerned with
17   assuring passenger safety "in connection with flight." *Id.* at 128-29. In contrast, the statute and
18   regulations did not specifically regulate the disembarkation of passengers, which occurs only after
19   the plane has landed, taxied to the gate, and come to a complete stop. *Id.* at 128-30. Thus, the
20   court concluded that the FAA did not preempt state law standards of care regarding
21   disembarkation. *Id.* at 131.

22   The Third Circuit in *Elassaad* further held that the ACAA did not preempt Elassaad's
23   claims. The court read the ACAA as primarily aimed at ensuring respect and equal treatment for
24   disabled airline passengers. *Id.* at 131-32. Although ACAA directed the FAA to issue regulations
25   "to ensure non-discriminatory treatment of qualified handicapped individuals *consistent with safe*
26   *carriage* of all passengers on air carriers," Pub. L. No. 99-435 § 2(a), 100 Stat. 1080 (1986)
27   (emphasis added), the Third Circuit viewed the ACAA's safety mandate as secondary to its
28   nondiscrimination purpose. 613 F.3d at 132. Thus, it concluded that while the ACAA might

7
Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

preempt state nondiscrimination laws as applied to air carriers, it did not preempt any state law duty to provide a passenger with a safe means of exiting an aircraft. *Id.* at 132-33. The Third Circuit also rejected an argument that conflict preemption applied, finding that any state law duty to assist Elassaad or provide safe exit from the aircraft could easily coexist with the ACAA's nondiscrimination mandate. *Id.* at 132. Accordingly, the Third Circuit ultimately held that the ACAA did not preempt personal injury claims based on negligent failure to assist or provide a safe means of exit for disabled passengers. *Id.* at 132-33.

### 2.       District Court Decisions

Although the Ninth Circuit has not yet addressed the preemptive effect of the ACAA, a number of district courts within the Ninth Circuit have considered the issue, with somewhat conflicting results. First, a number of California district courts have held that the ACAA preempts personal injury claims.[4] For instance, in *Johnson v. Northwest Airlines, Inc.*, Judge Walker considered a negligence claim alleging that Northwest Airlines breached its duty by failing to provide a passenger with requested wheelchair service, thereby causing injuries when the plaintiff attempted to walk to her connecting flight and fell while exiting a moving walkway. No. C 08-02272 VRW, 2010 WL 5564629, at *1 (N.D. Cal. May 5, 2010). Relying on *Montalvo* and *Martin*, Judge Walker reviewed the ACAA regulations governing carriers' obligations to provide disabled passengers with assistance in deplaning and obtaining transportation between gates to make a connection. *Id.* at *5-6. He found that the ACAA regulations establish carriers' obligations with specificity and concluded that "[t]his extensive regulation is of the sort contemplated by the Ninth Circuit in *Martin* and *Montalvo*, implying an intent by Congress to preempt state-law in this area." *Id.* at 6. Similarly, in *Gilstrap v. United Air Lines, Inc.*, the Central District of California considered various tort claims based upon the airline's failure to provide the plaintiff with wheelchair services and poor treatment by airline personnel in response

---

[4] In addition to the cases discussed below, Defendant urges the Court to follow *Hill v. Skywest Airlines, Inc.*, No. 1:06-cv-00801-SMS, 2008 WL 4816451 (E.D. Cal. Nov. 5, 2008). While the Court finds portions of the analysis in *Hill* to be persuasive, the decision was issued before the Ninth Circuit's decision in *Martin* and relies heavily on the district court decision subsequently reversed by the Third Circuit in *Elassaad*. In addition, the Plaintiff in *Hill* was not disabled. Accordingly, its analysis of ACAA preemption is not entirely helpful.

to plaintiff's request for accommodations. 2:10-cv-06131-JHN-JCx, at 2-3 (C.D. Cal. Jan. 21, 2011). There, the Central District agreed with Judge Walker's analysis and found that the plaintiff's claims were subject to field preemption by the ACAA. *Id.* at 7. The *Gilstrap* court distinguished *Elassaad* (which was decided after Judge Walker's decision) on grounds that Elassaad had not invoked the ACAA by requesting assistance, and further found that *Elassaad* read the anti-discrimination purpose of the ACAA too narrowly. *Id.* at 8. *See also Russell v. Skywest Airlines*, No. C 10-0450 MEJ, 2010 WL 2867123 (N.D. Cal. July 20, 2010) (finding that ACAA preempts tort claims based on failure to provide assistance in deplaning).

Defendants urge this Court to follow the above decisions. Plaintiff, on the other hand, argues that these cases were wrongly decided and asks the Court to follow the Third Circuit's decision in *Elassaad* and the Western District of Washington's decision in *Hodges v. Delta Air Lines, Inc.*, No. C09-1547-BAT, 2010 WL 5463832 (W.D. Wash. Dec. 29, 2010). In *Hodges*, the plaintiff was injured when she fell from a wheelchair as employees pushed her down the aisle of a Delta aircraft, and she brought a claim for negligence. *Id.* at *1. The court reviewed the ACAA regulations and found that they "say nothing about how to move a disabled passenger from a plane seat to a wheelchair, how many people must assist the passenger, whether the passenger must be buckled in to the wheelchair, and the like." *Id.* at *4. Because the regulations left open the standard of care for moving a passenger in a wheelchair, the court could not find the "clear and manifest intent" of Congress to preempt state law. *Id.* The court thus agreed with the reasoning in *Elassaad* and concluded that the ACAA did not preempt the plaintiff's negligence claim.

### B. Preemption under the ACAA

This Court believes that the district court decisions in *Johnson* and *Hodges* are reconcilable—with each other and with Ninth Circuit precedent—and that both apply, in part, to this case. Under the Ninth Circuit's analysis in *Martin*, field preemption applies only where the agency has issued relevant and "pervasive regulations" in the specific area covered by the tort claim or state law at issue. 555 F.3d at 809, 811. Pursuant to this analysis, the Court agrees with Judge Walker's determination in *Johnson* that the ACAA supplies extensive regulation in certain areas related to access for and treatment of people with disabilities. Here, for instance, Plaintiff

9

alleges that Defendants breached their duty in part by "[f]ailing to provide the assistance exiting the plane to which Plaintiff was entitled due to her previous arrangements with Defendants." Compl. ¶¶ 23(a), 25(a), 27(a). The ACAA regulates with specificity an airline's obligations with respect to boarding and deplaning assistance, particularly in instances where the plane does not pull up directly to the gate. *See* 14 C.F.R. § 382.41(c) (requiring airlines to provide information on the availability of level-entry boarding to an aircraft); § 382.95 (detailing obligations to provide deplaning assistance, including provision of assistance through use of lifts or ramps where level-entry loading bridges are not available); § 382.99 (requiring carriers to negotiate with airport operators to ensure provision for lifts where level-entry loading bridges are not available for boarding and deplaning); § 382.101 (requiring carriers to ensure provision of boarding and deplaning assistance when level-entry boarding and deplaning assistance is not required to be provided); § 382.141 (requiring carriers to train personnel regarding the use of boarding and deplaning assistance equipment and procedures). Thus, the Court agrees that to the extent Plaintiff's negligence claim rests upon Defendant's failure to provide assistance in deplaning, the ACAA appears to occupy the field and preempt any state law duty to provide greater or different assistance.

The Court also agrees, however, that the ACAA does not preempt all claims related to interactions between airlines and disabled passengers. *See Elassaad*, 613 F.3d at 132 ("we are not persuaded that Congress intended the ACAA to preempt *any* state regulation of the interaction between an air carrier and disabled passengers"). Under the Ninth Circuit's analysis in *Martin*, "[i]n areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable." 555 F.3d at 811. Thus, in *Hodges*, for instance, the claim was not that the airline failed to provide required assistance, but rather that assistance was provided in a negligent manner. While the ACAA regulations specify when and to whom wheelchair assistance must be provided, they do not elaborate on the proper procedures or standards of care to be followed when transporting someone in a wheelchair. *Id.* at *4. In such cases, where a disabled passenger brings a claim that does not depend on duties pervasively regulated by the ACAA, the Court agrees that the reasoning of *Martin* precludes a finding of preemption.

**C. Application of ACAA Preemption to Plaintiff's Claims**

The difficulty in this case is determining the precise basis for Plaintiff's claims. In her first three causes of action for violations of the California Civil Code and negligence, Plaintiff alleges that Defendants breached a duty of care in four ways:

> (1) Failing to provide the assistance exiting the plane to which Plaintiff was entitled due to her previous arrangements with Defendants;
>
> (2) Failing to warn Plaintiff of a dangerous condition on the Defendants' premises;
>
> (3) Failing to take steps to cure a dangerous condition on the Defendants' premises; and
>
> (4) Failing to properly train and supervise flight personnel regarding appropriate procedures for passengers exiting the plane.

Compl. ¶¶ 23, 25, 27. Plaintiff's fourth cause of action for negligent infliction of emotional distress also presumably depends upon breach of one of these four duties, as it alleges that Defendants engaged in negligent conduct that caused Plaintiff emotional distress. Compl. ¶ 29. At the motion hearing, Plaintiff's counsel confirmed the Court's sense that Plaintiff asserts two basic theories of liability: first, that Plaintiff was injured due to Defendants' failure to assist her in exiting the plane (going to alleged breaches (1) and (4) above), and second, that Plaintiff was injured due to a dangerous condition on the premises (going to alleged breaches (2), (3), and possibly (4) above).[5] As the Court believes that ACAA preemption applies differently to these two theories, the Court will address each separately below.

### 1. Failure to provide deplaning assistance and training

As the Court has already indicated, the ACAA provides comprehensive regulations regarding carriers' obligations to provide boarding and deplaning assistance. The ACAA likewise imposes specific requirements regarding the training carriers must provide for personnel involved in providing boarding and deplaning assistance. *See* 14 C.F.R. § 382.141(a)(1)(iii) (requiring training to proficiency concerning use of boarding and deplaning assistance equipment and

---

[5] At oral argument, Plaintiff's counsel suggested that the first theory of liability included a claim that Defendants negligently assisted Plaintiff. The Complaint as currently pled does not support this, however. Rather, the Complaint alleges that "[n]o assistance was provided for Ms. Summers' exit of the plane: no flight attendants offered to help her, and no one even made her aware that there was a flight of stairs she would have to descend." Compl. at 2.

11

Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

procedures); *id.* § 382.141(a)(5) (requiring carriers to develop a program to provide refresher training as needed to maintain proficiency); *id.* § 382.143 (detailing requirements for when training must occur); *id.* § 382.145 (requiring carriers to retain records regarding initial and refresher training for employees). Thus, to the extent that Plaintiff's claims are premised on a breach of the duty to provide deplaning assistance or to properly train employees regarding deplaning procedures for disabled passengers, the Court agrees with Defendants that Plaintiff's claims are subject to field preemption by the ACAA. Under *Montalvo*, however, field preemption in this context does not bar Plaintiff from seeking state remedies.[6] It merely preempts any state-law-based standard of care.

---

[6] Courts have generally assumed that the field preemption analysis applied to the FAA in *Montalvo* and *Martin* applies equally to the ACAA, which is an amendment to the FAA. *See Johnson*, 2010 WL 5564629, at *5-6 (applying *Montalvo* and *Martin* to ACAA preemption analysis). However, at least one court has found that *conflict* preemption precludes state remedies based upon violations of the ACAA. *See Gilstrap*, 2:10-cv-06131-JHN-JCx, at 6-7. In *Gilstrap*, the Court noted that the ACAA does not create a private right of action. *Id.* (citing *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1269-71 (10th Cir. 2004) and *Love v. Delta Air Lines*, 310 F.3d 1347, 1354-59 (11th Cir. 2001)). The *Gilstrap* court then reasoned that because the ACAA provides a scheme for administrative enforcement, allowing plaintiffs to recover for ACAA violations under state law causes of action would conflict with Congress's intent to limit passengers' remedies to the administrative remedies provided in 49 U.S.C. §§ 41705 and 46110. *Gilstrap*, 2:10-cv-06131-JHN-JCx, at 7.

Although Defendants raised conflict preemption and cited *Gilstrap* in their opening brief, they have since conceded, both in their reply brief and at oral argument, that Plaintiff may pursue state law remedies if she can establish a violation of a federal standard. *See* Reply to Pl.'s Opp'n at 1, ECF No. 27 ("The Airlines *did not – and do not –* assert that . . . State law *remedies* are foreclosed to plaintiffs in cases involving aviation, access to commercial aviation, aviation safety or the interactions between airlines and their disabled customers, provided the plaintiff can establish the existence of an applicable federal standard of care and a deviation from that standard"). At any rate, the Court respectfully disagrees with the conflict preemption analysis in *Gilstrap*. It is true that state standards of care may conflict with the ACAA regulations, which are carefully calibrated to balance a need to provide assistance with a desire not to impose unnecessary or insensitive intervention. However, the Court believes that the federal standard under the ACAA can co-exist with state *remedies*, just as the federal standards under the FAA coexist with state remedies. *See Abdullah*, 181 F.3d at 375 ("Federal preemption of the standards of care can coexist with state and territorial tort remedies.").

While the ACAA provides for the filing of complaints with DOT, *see* 49 U.S.C. § 41705; 14 C.F.R. § 382.159, it does not appear that this administrative enforcement mechanism would provide plaintiffs any remedy or recovery for personal injury claims. Rather, the FAA administrative enforcement scheme provides only for an investigation, enforcement proceeding, and the possible imposition of a civil fine owed to the Government. *See* 49 U.S.C. §§ 46101, 46301. Moreover, as the Ninth Circuit has noted, the general provisions of the FAA state that "[a] remedy under this part [which includes the ACAA and the administrative enforcement scheme] is in addition to any other remedies provided by law." 49 U.S.C. § 40120; *see also Martin*, 555 F.3d at 808. Relying on this provision and another provision requiring carriers to maintain insurance to cover damages related to bodily injuries, the Ninth Circuit reasoned that since the FAA does not create a federal cause of action for personal injury suits, it must contemplate tort suits brought under state law. *Martin*, 555 F.3d at 808. This does not suggest that the administrative enforcement provisions of the FAA are intended to displace all state law remedies. Accordingly,

12

*See Montalvo*, 508 F.3d at 468 (holding that "federal law generally establishes the applicable *standards of care* in the field of aviation safety" and dismissing state-law failure to warn claim because federal law did not impose a duty to warn about deep vein thrombosis) (emphasis added); *see also Abdullah*, 181 F.3d at 365 ("despite federal preemption of the standards of care, state and territorial damage remedies still exist for violation of those standards"); *Martin*, 555 F.3d at 813-15 (discussing Ninth Circuit's express adoption of *Abdullah* rule that FAA preempts state standards of care) (Bea, J., concurring).

Preemption of state-law standards of care, in turn, precludes Plaintiff from asserting failure to assist and failure to train claims under California Civil Code §§ 2100 and 2101, as these statutes impose heightened state-law-based standards of care.  *See* Cal. Civ. Code § 2100 (imposing duty of "utmost care and diligence" upon common carriers); Cal. Civ. Code §2101 (imposing strict liability standard on common carriers regarding duty to provide vehicles that are safe and fit for their purposes).  As to Plaintiff's common law negligence and negligent infliction of emotional distress claims, however, it would seem that Plaintiff may maintain these claims as long as they are premised on breach of a federal standard of care as set forth in the ACAA and its implementing regulations.[7]  It is not entirely clear based on Plaintiff's pleadings whether she intended to bring these claims under the state common law standard of care or under the standard imposed by the ACAA.  However, as the Complaint does not cite ACAA regulations and Plaintiff has not argued that the claims are pled under the federal standard of care, the Court assumes that Plaintiff

---

the Court concludes that the *Abdullah* rule, expressly adopted by the Ninth Circuit, applies equally to the ACAA such that the ACAA only preempts state law standards of care and does not preclude state remedies.

[7] At the motion hearing, Plaintiff suggested that if the Court finds ACAA preemption, the standard of care would be supplied by 14 C.F.R. § 91.13(a), which provides that "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."  Plaintiff expressed concern that such a "careless or reckless" standard imposes a heightened burden on injured plaintiffs.  The question of what federal standard of care the ACAA imposes is not properly before the Court.  However, the Court notes that *Abdullah* suggested that § 91.13 would supply the standard of care only where there is no specific regulation addressing the particular safety issue in the case.  181 F.3d at 371.  Here, the Court has found that ACAA regulations specifically address the assistance airlines are required to provide.

13
Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

currently relies on a state standard. Accordingly, Plaintiff is granted leave to amend to replead this aspect of her negligence claims under the federal standard of care.

### 2.      Failure to cure and warn about a dangerous condition

On the other hand, to the extent that Plaintiff's claims are based on failure to warn of a dangerous condition and failure to take steps to cure the dangerous condition, the ACAA does not appear to have a preemptive effect. Plaintiff's Complaint alleges that the large gap or step between the plane and the platform "constitut[ed] a dangerous condition for Ms. Summers and the other passengers." Compl. ¶ 16. Thus, Plaintiff appears to allege that the gap or step presented a danger independent of any need for assistance or accommodation specific to Plaintiff or her physical disabilities. The Ninth Circuit has already held that the FAA does not preempt personal injury claims based on the defective or dangerous condition of aircraft stairs. *See Martin*, 555 F.3d at 812. Thus, a non-disabled passenger would face no obstacles to bringing suit for injuries caused by a dangerously large gap between the plane and the stair platform. The Court agrees with Plaintiff that unless the ACAA specifically regulates such hazards, it would be inequitable and legally insupportable to bar Plaintiff from bringing such a claim simply because she is disabled.

Like the FAA, the ACAA does not regulate a carrier's basic duty to ensure that an exit path is well-maintained and free of hazards. Rather, the ACAA focuses on the carriers' obligations to provide wheelchair assistance or lifts to enable disabled passengers to deplane. Accordingly, the ACAA does not preempt Plaintiff's claims that Defendants were negligent in failing to cure a dangerous condition (i.e., the large step or gap) and failing to warn Plaintiff of that condition.[8] In addition, the Court is unable to ascertain whether Plaintiff's failure to train allegations are directed only at a failure to train employees on proper deplaning procedures for disabled passengers, or if Plaintiff also intends to allege a failure to train regarding procedures for curing or warning about

---

[8] At the motion hearing, Defendant argued that *Montalvo* precludes Plaintiff's failure to warn claim because it found that the FAA preempts the field of passenger warnings. The Court disagrees. *Montalvo* dealt with the uniform set of warnings and instructions that must be provided before and during a flight to advise passengers of risks and procedures specific to air travel. *Montalvo*, 508 F.3d at 472-73; *see also Martin*, 555 F.3d at 810 (describing the "familiar litany" of passenger warnings found preempted in *Montalvo*). The Court is not persuaded that the FAA's passenger warning regulations are intended to preempt state-law duties to warn about ordinary hazards, such as dangerous conditions on the premises, that do not present risks specific to air travel.

14
Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

dangerous conditions along an exit route. To the extent that Plaintiff intends to allege a failure to train regarding dangerous conditions, such a claim would not be preempted.

In sum, the Court finds that Plaintiffs' claims are not subject to preemption to the extent that they are based on Defendants' failure to cure or to warn about a dangerous condition on the premises. To the extent that her claims are based upon Defendants' failure to provide deplaning assistance or training on such assistance, Plaintiff's claims are preempted by the ACAA. The effect of ACAA preemption is to bar any claims based on a state-law-based standard of care. Accordingly, Plaintiff cannot base her California Civil Code claims upon breach of a duty to provide deplaning assistance or training in such assistance. However, as Plaintiff may be able to replead her claims for negligence and negligent infliction of emotional distress under the federal standard of care, she is granted leave to amend these claims.

### D. FAA Preemption of Plaintiff's First and Second Causes of Action

Defendants argue that even if the ACAA does not entirely preempt Plaintiff's claims, Plaintiff's first and second causes of action under the California Civil Code are preempted by the FAA. Relying on *Hill v. Skywest Airlines, Inc.*, No. 1:06-cv-00801-SMS, 2008 WL 4816451 (E.D. Cal. Nov. 5, 2008), Defendants argue that the FAA preempts any claim based upon a state-law-based standard of care. As the Court previously noted, California Civil Code §§ 2100 and 2101 impose a heightened standard of care on common carriers. Thus, as discussed above, plaintiff may not bring her failure to assist or failure to train claims under these statutes because the ACAA provides the exclusive federal standard of care for such claims. To the extent that Plaintiff bases her California Civil Code claims on Defendants' failure to cure and warn of a dangerous condition, however, the Court does not believe that either the ACAA or the FAA preempts state-law-based standards of care.

In *Martin*, which was decided after *Hill*, the Ninth Circuit clarified that the FAA preempts state-law standards of care only when the agency has issued "pervasive regulations" in the specific area covered by the state law claim at issue. 555 F.3d at 811. Otherwise, "[i]n areas without pervasive regulations or other grounds for preemption, the state standard of care remains

applicable." *Id.* As previously noted, *Martin* explicitly considered whether aircraft stairs were pervasively regulated by the FAA and found that they were not:

> Airstairs are not pervasively regulated; the only regulation on airstairs is that they can't be designed in a way that might block the emergency exits. 14 C.F.R. § 25.810. The regulations have nothing to say about handrails, or even stairs at all, except in emergency landings. No federal regulation prohibits airstairs that are prone to ice over, or that tend to collapse under passengers' weight. The regulations say nothing about maintaining the stairs free of slippery substances, or fixing loose steps before passengers catch their heels and trip. It's hard to imagine that any and all state tort claims involving airplane stairs are preempted by federal law. Because the agency has not comprehensively regulated airstairs, the FAA has not preempted state law claims that the stairs are defective.

*Id.* at 812. Defendants have not presented the Court with any FAA regulations that would change this analysis. The Court has already indicated that insofar as Plaintiff asserts negligence claims based upon Defendants' duty to maintain stair platforms and exits free of hazards, or to warn of such hazards, her claims are not subject to ACAA preemption. Under the analysis in *Martin*, such claims are not subject to FAA preemption either, and Plaintiff may therefore bring her failure to cure and failure to warn claims under the state-law standards imposed by California Civil Code §§ 2100 and 2101.

### E. Sufficiency of Plaintiff's Fourth Cause of Action

Finally, Defendants argue that to the extent it is not preempted, Plaintiff's fourth cause of action is insufficiently pled. The Court agrees that Plaintiff cannot sustain a separate cause of action for negligent infliction of emotional distress on the facts currently pled. "A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1377, 117 Cal. Rptr. 3d 747 (Cal. Ct. App. 2010) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004, 25 Cal. Rptr. 2d 550, 863 P.2d 795 (1993)). Under California law, it is well-settled that "in ordinary negligence actions for physical injury, recovery for emotional distress caused by that injury is available as an item of parasitic damages." *Potter*, 6 Cal. 4th at 981. In her opposition brief, Plaintiff explains that she suffered serious emotional distress due to the fact that she was injured exiting the plane, lay on a platform in serious pain while waiting for medical care, required surgery for her injuries, and spent weeks in the hospital. Opp'n to Defs. Mot. to Dismiss at 22, ECF No. 19. Thus, Plaintiff's allegations of

1   emotional distress are connected to the physical injury that is the basis for her ordinary negligence

2   claim, and any damages related to that distress can be recovered as "parasitic damages" in the

3   negligence claim. As currently pled, therefore, Plaintiff's negligent infliction of emotional distress

4   claim is no more than a restatement of her third cause of action for negligence. *See Catsouras v.*

5   *Department of California Highway Patrol*, 181 Cal. App. 4th 856, 875-76, 104 Cal. Rptr. 3d 352

6   (Cal. Ct. App. 2010) ("we observe that plaintiffs, in their second amended complaint, framed both

7   negligence and negligent infliction of emotional distress causes of action. To be precise, however,

8   the [only] tort with which we are concerned is negligence. Negligent infliction of emotional

9   distress is not an independent tort . . ."). However, as it is possible that Plaintiff may have some

10  other basis for her negligent infliction of emotional distress claim that is unrelated to the

11  negligence that allegedly caused her physical injuries, the Court dismisses this claim with leave to

12  amend.

13  **IV. Conclusion**

14  For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and

15  DENIED in part. In particular, the Court concludes as follows:

16  (1) Regarding Plaintiff's first and second causes of action under California Civil Code

17       §§ 2100 and 2101: To the extent that Plaintiff's claims are based on Defendants' failure

18       to provide deplaning assistance or Defendants' failure to properly train flight personnel

19       regarding deplaning procedures for disabled passengers, Plaintiff's claims are

20       preempted by the ACAA and cannot be amended to cure the deficiency. However,

21       Plaintiff may maintain these claims to the extent that they are based on Defendants'

22       failure to warn about or cure a dangerous condition on the premises, or on Defendants'

23       failure to train employees regarding proper procedures for dealing with such dangerous

24       conditions.

25  (2) Regarding Plaintiff's third cause of action for negligence: To the extent that Plaintiff's

26       claim is based on Defendants' failure to provide deplaning assistance or Defendants'

27       failure to properly train flight personnel regarding deplaning procedures for disabled

28       passengers, Plaintiff's claims are preempted by the ACAA. However, Plaintiff is

17
Case No.: 10-CV-05730-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION DISMISS

granted leave to amend this aspect of her negligence claim to allege violations of the federal standard of care, if possible. Plaintiff may also maintain her negligence claim based on Defendants' failure to warn about or cure a dangerous condition on the premises, or on Defendants' failure to train employees regarding proper procedures for dealing with such dangerous conditions, as these bases for the claim are not preempted.

(3) Plaintiff's fourth cause of action for negligent infliction of emotional distress is dismissed with leave to amend.

Plaintiff shall file a First Amended Complaint within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: April 4, 2011

_____
LUCY H. KOH
United States District Judge